UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEANNE HODGE,

       Plaintiff,

v.                                    Case No. 8:21-cv-136-MAP

COMMISSIONER OF SOCIAL SECURITY

       Defendant.

_____/

## ORDER

       Plaintiff Jeanne Hodge seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI).  Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by improperly concluding that Plaintiff did not have a severe impairment prior to January 1, 2020, and contends that remand is warranted under sentence six of 42 U.S.C. § 405(g) based upon new, material, noncumulative evidence provided by Plaintiff to the Court.  As the ALJ's decision was based on substantial evidence and employed proper legal standards, and because remand under sentence six is not warranted, the Commissioner's decision is affirmed.

     *I.*    *Background*

       Plaintiff, who was born in 1959, claimed disability beginning January 1, 2014 (Tr. 167, 171).  Plaintiff obtained at least a high school education, and her past relevant work experience included work as an insurance reviewer (Tr. 26-27, 201).  Plaintiff

alleged disability due to post-traumatic stress disorder (PTSD), sexual trauma, depression, and anxiety (Tr. 200).

Given her alleged disability, Plaintiff filed applications for a period of disability, DIB, and SSI (Tr. 167-70, 171-76).  The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 45-98, 103-08, 111-22). Plaintiff then requested an administrative hearing (Tr. 123-24).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34-44).  Following the hearing, the ALJ issued a partially favorable decision, finding that Plaintiff was not disabled prior to January 1, 2020, but that Plaintiff became disabled as of January 1, 2020, and continued to be disabled through the date of the decision, noting that Plaintiff's disability was expected to last 12 months past the onset date (Tr. 12-33). Additionally, the ALJ indicated that Plaintiff was not under a disability within the meaning of the Social Security Act at any time through December 31, 2018, the date last insured (Tr. 27).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2018, and had not engaged in substantial gainful activity since January 1, 2014, the alleged onset date (Tr. 19).  After conducting the administrative hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following medically determinable impairments prior to January 1, 2020: history of lumbar discectomy in 1984, vitamin D deficiency, insomnia, corneal dystrophy, bilateral cataract, refractive error, major depressive disorder, unspecified anxiety disorder, and PTSD (Tr. 19).  Even though the ALJ

identified several medically determinable impairments, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that significantly limited or was expected to significantly limit her ability to perform basic work-related activities for 12 consecutive months (Tr. 19). Consequently, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments prior to January 1, 2020 (Tr. 19).

According to the ALJ, beginning on January 1, 2020, Plaintiff had the severe impairments of chronic obstructive pulmonary disease (COPD), obesity, and other trauma/stressor-related disorder (Tr. 22). Notwithstanding the noted severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) since January 1, 2020, to perform light work with the following limitations:

> she can lift 20 pounds frequently and 10 pounds continuously; she can carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for 6 hours in an 8 hour day and sit for 6 hours in an 8 hour day; she requires a sit/stand option with an alternating interval of 1-2 hours; she can frequently push and/or pull with the upper extremities and reach above shoulder level with both arms; she can constantly reach waist to chest with both arms, handle with both hands, finger with both hands, and feel with both hands; she can occasionally stoop and crouch; she can frequently climb ramps/stairs, balance, and crawl; she can constantly kneel; she cannot climb ladders or scaffolds; she cannot work around pulmonary irritants or high exposed places; she can occasionally work around humidity/wetness, extreme cold, extreme heat, and vibrations; she is able to perform simple, routine, and repetitive tasks; she is able to understand, remember, and carry out simple instructions; she is limited to work that requires occasional changes in the work setting;

and she is limited to work that requires occasional interaction with the
public, coworkers, and supervisors.

(Tr. 23-24). Considering Plaintiff's noted impairments, the ALJ determined that, since
January 1, 2020, Plaintiff could not perform her past relevant work as an insurance
reviewer (Tr. 26).

In considering Plaintiff's ability to perform other work, the ALJ indicated that
Plaintiff was an individual closely approaching retirement age on January 1, 2020, the
established disability onset date, and that Plaintiff did not have work skills she could
transfer to other occupations within the RFC. Given Plaintiff's age, education, work
experience, and RFC, the ALJ found that, since January 1, 2020, no jobs existed in
significant numbers in the national economy that Plaintiff could perform (Tr. 27).
Accordingly, as noted, the ALJ concluded that Plaintiff was not disabled prior to
January 1, 2020, including not being under a disability for purposes of DIB prior to
December 31, 2018, but that Plaintiff became disabled on January 1, 2020, and
continued to be disabled through the date of the decision (Tr. 27).

Given the ALJ's partially favorable findings, Plaintiff requested review from the
Appeals Council, which the Appeals Council denied (Tr. 1-6, 164-66). Plaintiff then
timely filed a complaint with this Court (Doc. 1). The case is now ripe for review
under 42 U.S.C. §§ 405(g), 1383(c)(3).

II.    Standard of Review

To be entitled to benefits, a claimant must be disabled, meaning he or she must
be unable to engage in any substantial gainful activity by reason of any medically

4

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

III.   *Discussion*

A.   *Disability Onset Date*

Plaintiff first contends that the ALJ erred by finding that Plaintiff had no severe impairments prior to January 1, 2020.  The claimant bears the burden of proving the existence of a disability, as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  To prove the existence of a disability, a claimant must furnish medical and other evidence rather than simply relying on conclusory statements of pain or other symptoms.  42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(D) & (H)(i); *see* 20 C.F.R. §§ 404.1529(b), 416.929(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present.").

In considering whether a claimant has a disability, the ALJ considers the medical severity of a claimant's impairments at step two of the sequential analysis.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Step two operates as a threshold inquiry.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (*per curiam*).[1]  At step two, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to perform basic work activities, including physical work activities, such as walking, standing, sitting, lifting, reaching, carrying, and handling, and mental work activities, such as understanding, carrying out, and remembering simple instructions; use of judgment;

---

[1]  Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 404.1522(a), 416.920(a)(4)(ii), 416.921, 416.922(a).  The claimant bears the burden of showing that an impairment is severe.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

"An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*).  "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities.  *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citations omitted); 20 C.F.R. §§ 404.1522, 416.922.  Likewise, an impairment is considered non-severe if it fails to meet the duration requirement, meaning it has not lasted or is not expected to last for a continuous period of at least 12 months.  *See* 20 C.F.R. §§ 404.1509, 416.909.

As the Commissioner contends, Plaintiff failed to point to any evidence demonstrating that Plaintiff's impairments would limit her ability to perform basic work activities, thus rendering them severe impairments, prior to January 1, 2020.

Instead, Plaintiff relies on statements made in the January 2, 2020 psychological consultative examination setting forth Plaintiff's medical history, examination results, and an opinion that Plaintiff would be limited to a reduced range of light work activity and "posits that it is apparent that she did not go from having no severe impairments whatsoever, to being limited to less than a full range of light work, including severe mental limitations, the next day" (Doc. 22, at 10).   While I appreciate Plaintiff's position, the record simply does not support an onset of disability prior to January 1, 2020.

Rather, as the ALJ indicated, the record is devoid of any physical health treatment notes from July 2016 or any mental health treatment notes from May 2018 until the ALJ referred Plaintiff for both psychological and physical consultative examinations in January 2020 (Tr. 24, 289-418).   In fact, the ALJ addressed the lack of records during the December 2019 administrative hearing, stating that he would send Plaintiff for consultative examinations, given that the record appeared sparse (Tr. 41).   Indeed, at the time of the administrative hearing, the medical record consisted of 85 pages of treatment records from the Department of Veterans Affairs (VA), ranging from July 2013 to April 2018 (Tr. 289-374).   Following the hearing, Plaintiff's counsel submitted another 22 pages of records from the VA, ranging from April 1982 to March 2008 and mainly consisting of treatment for insomnia, vision issues, and lower back pain (Tr. 377-98).   Consistent with his statement, however, the ALJ sent Plaintiff to consultative examinations with Dr. Thomas Trimmer and Dr. Eniola Owi

in January 2020, which formed the basis for his finding that Plaintiff became disabled as of January 1, 2020 (Tr. 16-28, 400-05, 407-18).

Although the treatment records prior to January 1, 2020, showed that Plaintiff was diagnosed with both physical and mental impairments, including anxiety, depression, PTSD, vision problems, and lower back pain, the records do not support a finding that any of Plaintiff's impairments were severe before that time. As an initial matter, "[d]iagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes*, 936 F.2d at 1218. "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*). Furthermore, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter*, 791 F.2d at 1547. Plaintiff's diagnoses alone therefore do not support a finding that she had a severe impairment prior to January 1, 2020.

Nor do the treatment records establish that Plaintiff had a severe impairment prior to that time. For example, as to Plaintiff's lower back pain, the ALJ discussed a January 2006 VA physical examination and functional capacity assessment, wherein the examiner indicated that Plaintiff had a simple lumbar discectomy in 1984 that was successful (Tr. 21, 383-91). The examiner indicated that Plaintiff did not experience symptoms until 1991 or 1992 when back aches developed while doing sit-ups and

running and that Plaintiff experienced no chronic pain but rather only experienced pain with some activities, including lifting more than 50 pounds "the wrong way" (T. 389). At that time, Plaintiff was receiving no formal treatment for her back pain, and contemporaneous physical examination notes were unremarkable (Tr. 383-89). Notwithstanding, Plaintiff was limited to being on her feet for one hour; walking six miles in boots; walking four miles in field gear; walking four miles with field gear and a 40-pound rucksack; remaining on her feet for two to three hours; and not being able to run or do sit-ups (Tr. 390-91). Subsequent VA treatment records in April 2014 confirmed that Plaintiff still experienced chronic lower back pain, but examination notes were unremarkable (Tr. 21, 339-44). Further, Plaintiff reported that her pain level registered as a three on a 10-point scale, and her treatment regimen was conservative, consisting of over-the-counter medications she could take as needed (Tr. 341-42).

Additionally, as the ALJ discussed, Plaintiff's reported vision issues as early as 1982, which she managed conservatively with corrective lenses and/or glasses (Tr. 21, 332, 379-80, 384-85, 387, 389). Indeed, during a January 2015 optometry consult, Plaintiff complained that she wanted new glasses because she experienced blurry vision with her current glasses but vocalized no other complaints as to flashes, floaters, or pain (Tr. 332). Plaintiff was diagnosed with corneal dystrophy, bilateral cataract, and refractive error but demonstrated normal findings upon examination, except for her visual acuity (Tr. 332-33). Even so, with correction, Plaintiff's visual acuity registered 20/40 (OS) and 20/50+2 (OD) (Tr. 332). Nothing in the record thus

showed that these or any of Plaintiff's other physical impairments constituted severe impairments before January 1, 2020.

Likewise, nothing in the record supports a finding that Plaintiff's mental impairments were severe prior to January 1, 2020.  In the decision, the ALJ acknowledged that Plaintiff stated that she stopped working in August 2013 due to worsening psychological symptoms stemming from anxiety, depression, and PTSD related to childhood trauma and adult sexual abuse in the military (Tr. 21-22).  As the ALJ highlighted, treatment records noted that a significant portion of Plaintiff's stress stemmed from financial reasons, housing issues, and lack of social support and that she lived independently and could perform activities of daily living with only some difficulties (Tr. 22).  More importantly, mental status examination notes were typically unremarkable, noting Plaintiff showed appropriate grooming and hygiene, appropriate appearance, normal behavior, appropriate eye contact, no psychomotor deficits, normal speech, normal thought content and process, normal to depressed or mildly anxious mood, appropriate affect, no perceptual deficits, good to limited insight, good to fair judgment, no suicidal or homicidal ideation, and intact memory, attention, and fund of knowledge and was alert, cooperative, easy to engage, fully oriented, and generally in no acute distress (Tr. 22, 303-19, 324-31, 334-39).  Further, the record indicated that Plaintiff experienced no psychiatric hospitalizations, had no suicide attempts, both underwent therapy and received medication for her anxiety, and that her major depressive disorder was in remission (Tr. 331, 334-38).  Though Plaintiff was diagnosed with and obtained treatment for her mental health impairments prior

to January 1, 2020, the record does not support a finding that Plaintiff's mental impairments caused more than a mild limitation in any functional area prior to January 1, 2020, as the ALJ properly concluded (Tr. 22).  *See Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 879 (11th Cir. 2012) (concluding that, though the record indicated a history of anxiety and depression for which the claimant was prescribed medication, nothing in the record indicated that the claimant experienced any effects from the mental impairments that could be expected to interfere with her ability to work).  Given the foregoing, the ALJ did not err in finding that Plaintiff did not experience a severe mental or physical impairment prior to January 1, 2020.[2]

Notwithstanding, Plaintiff argues that the ALJ should have obtained the services of a medical expert if he deemed the record either inadequate or ambiguous as to the specific onset date.  In doing so, Plaintiff relies upon Social Security Ruling (SSR) 83-20, arguing that SSR 83-20 prescribes the procedure by which the Commissioner should determine the onset of disability.  *See* SSR 83-20, 1983 WL 31249 (1983).  Plaintiff's reliance upon SSR 83-20 is misplaced, however.  Namely, the SSA explicitly rescinded and replaced SSR 83-20 as of October 2, 2018 when it issued SSR 18-01p, which directly addresses how the SSA determines the established onset date, sometimes referred to as "EOD," in disability claims.  *See* SSR 18-01p, 2018 WL 4945639, at *1-2 (Oct. 2, 2018).  SSR 18-01p states:

> We need specific medical evidence to determine whether a claimant meets the statutory definition of disability.  In general, an individual has

---

[2]  As discussed below, the additional evidence provided by Plaintiff in this proceeding is not material and thus would not change the result.

> a statutory obligation to provide us with the evidence to prove to us that he or she is disabled.  This obligation includes providing us with evidence to prove to us when he or she first met the statutory definition of disability.  The Act also precludes us from finding that an individual is disabled unless he or she submits such evidence to us.

2018 WL 4945639, at *4 (footnotes omitted).  If the ALJ needs to infer the date that a claimant first meets the statutory definition of disability, the ALJ may call on the services of a medical expert by soliciting testimony or requesting response to written interrogatories.  SSR 18-01p, 2018 WL 4945639, at *6.  Importantly, "[t]he decision to call on the services of [a medical expert] is always at the ALJ's discretion," and "[n]either the claimant nor his or her representative can require an ALJ to call on the services of [a medical expert] to assist in inferring the date that the claimant first met the statutory definition of disability."  SSR 18-01p, 2018 WL 4945639, at *6.

Even though Social Security proceedings are inquisitorial rather than adversarial in nature, claimants must establish their eligibility for benefits.  *Ingram*, 496 F.3d at 1269; 20 C.F.R. §§ 404.1512(a), 416.912(a).  During the administrative process, therefore, a claimant must inform the SSA about or submit all evidence known to the claimant relating to whether the claimant is blind or disabled.  20 C.F.R. §§ 404.1512(a), 416.912(a).  Though the claimant bears the burden of providing medical evidence showing she is disabled, the ALJ is charged with developing a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  The ALJ maintains this basic obligation to develop a full and fair record without regard for whether the claimant is represented by counsel.  *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).  When the plaintiff demonstrates that the record reveals evidentiary

gaps which result in unfairness or "clear prejudice," remand is warranted. *Id.* at 935; *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice.") (quotation marks and citation omitted); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record.") (citation omitted).

Here, Plaintiff failed to show any unfairness or prejudice warranting remand for failure to properly develop the record. During the administrative hearing, Plaintiff indicated that the VA was the only place she had gone for treatment (Tr. 38). In the same discussion, the ALJ asked Plaintiff's representative, who also represented Plaintiff in this action, whether he had any additional evidence that day (Tr. 36). In response, he stated that he was supposed to let the ALJ know that he had been working on getting some updated records from the VA, he had sent several requests to the VA, and, while some records remained outstanding, he did not provide notice to the ALJ within the requisite five business days prior to the hearing to allow consideration of such records at the hearing (Tr. 36). *See* 20 C.F.R. §§ 404.935(a), 416.1435(a). Later in the hearing, he indicated that he was also handling a VA case for Plaintiff and had "access to the VA files, so what I can do is get you the VA records that are missing" and then stated that "if it comes in[,] we'll get that to you" (Tr. 41). Given the representations made during the administrative hearing, the ALJ afforded Plaintiff the

opportunity to supplement the record following the hearing, and Plaintiff did so (Tr. 375-98).  The ALJ also referred Plaintiff to the two consultative examinations after the hearing to assist in his determination of whether Plaintiff was disabled.  Neither of the consultative examiners stated that Plaintiff experienced an onset of disability prior to January 1, 2020 (Tr. 399-418).

The ALJ therefore took great care in developing a full and fair record and provided Plaintiff with ample opportunity to demonstrate a disability both before and after January 1, 2020.  The ALJ did not err in concluding that Plaintiff's disability onset began on January 1, 2020 and that the evidence of record did not support a finding that Plaintiff's impairments were severe prior to that date.  Substantial evidence supports the ALJ's findings in that regard.

### B. Sentence Six Remand

Plaintiff next argues that the matter should be remanded back to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of new, noncumulative, material evidence.  Specifically, Plaintiff points to a November 2021 VA ratings decision (Doc. 22, Ex. A) and a December 2016 VA Compensation and Pension (C&P) examination note related to Plaintiff's application for veteran disability benefits (Doc. 22, Ex. B) that did not appear in the record at the administrative level, and thus neither the ALJ nor the Appeals Council considered such evidence.  Plaintiff acknowledges that, under the new regulations, the Commissioner need not consider the decision of the VA in evaluating a claimant's impairments but must consider the supporting evidence underlying the VA's decision (Doc. 22, at 18).  *See* 20 C.F.R. §§

404.1504, 416.904.    According to Plaintiff, however, despite the Commissioner purportedly obtaining all of her VA records from January 1, 2013, through May 3, 2018, neither of the identified documents were included in the medical records provided by the VA.    While Plaintiff concedes that she bears the burden to establish entitlement to disability, including providing copies of all medical evidence, she contends that, where the Commissioner implies that all records were obtained from the VA, and "this sister federal agency failed to provide copies of all of its records, equity and justice dictate that if there is material evidence that was not part of the claims file at the time of the [ALJ's] decision, [] Plaintiff should be allowed to submit this evidence to the Federal court" (Doc. 22, at 19).

When reviewing final agency decisions on Social Security benefits, the exclusive methods by which district courts may remand to the Commissioner of Social Security are set forth in sentence four and sentence six of 42 U.S.C. § 405(g).  *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993).  Sentence six provides:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ….

42 U.S.C. § 405(g).  Sentence six constitutes the only way in which a district court may remand a case to the Commissioner for consideration of new evidence not presented to the Commissioner at any stage of the administrative process and requiring further

review.  *See Ingram*, 496 F.3d at 1267-68; *see also Jones v. Comm'r of Soc. Sec. Admin., Miami S. Region*, 497 F. App'x 888, 891 (11th Cir. 2012).  To establish a basis for remand under sentence six, therefore, a claimant must demonstrate that (1) there is new, noncumulative evidence; (2) the evidence is "material," meaning relevant and probative such that a reasonable possibility exists that it would change the administrative result; and (3) good cause exists for the failure to submit the evidence at the administrative level.  *Hunter v. Soc. Sec. Admin.*, 808 F.3d 818, 821 (11th Cir. 2015) (citation omitted).

As discussed above, during the administrative hearing, Plaintiff indicated that she only received treatment from the VA (Tr. 38), and Plaintiff's representative stated that he was also handling a VA case for Plaintiff and had "access to the VA files, so what I can do is get you the VA records that are missing" and then stated that "if it comes in[,] we'll get that to you" (Tr. 41).  Plaintiff's counsel then provided additional records from the VA the day after the conclusion of the administrative hearing (Tr. 375-98).  Neither in the more than six months between the conclusion of the administrative hearing and the ALJ's decision nor in the five months between the ALJ's decision and the denial of review by the Appeals Council did Plaintiff provide any further records for consideration at the administrative level or notify the ALJ or Appeals Council of any missing records.  Plaintiff now asks this Court to consider the November 2021 VA ratings decision (Doc. 22, Ex. A) and the December 2016 C&P examination note (Doc. 22, Ex. B), arguing that both provide support for remand

under sentence six.  As neither piece of evidence is material, however, the additional evidence does not warrant remand.

Initially, the VA issued its ratings decision in November 2021, a year and a half after the ALJ's decision and a year after the Appeals Council's denial of review (Doc 22, Ex. A).[3] The VA assigned a 70% disability rating, effective January 23, 2015, for service connection for other specified trauma and stressor related disorder (claimed as PTSD), based on Plaintiff's anxiety, depressed mood, difficulty in adapting to a work-like setting, difficulty in adapting to stressful circumstances, difficulty in adapting to work, difficulty in establishing and maintaining effective work and social relationships, disturbances of motivation and mood, forgetting directions, forgetting names, forgetting recent events, mild memory loss, occupational and social impairment with reduced reliability and productivity, suicidal ideation, and suspiciousness.  The VA indicated that it considered Plaintiff's VA treatment records from January 19, 2016, to January 18, 2017, along with several other pieces of evidence, in making its disability rating decision.

Even though the VA determined that Plaintiff experienced a 70% disability rating, the disability ratings decision is not material for purposes of determining whether Plaintiff experienced a disability in this context.  As Plaintiff recognizes, under the new regulations, the ALJ need not provide any analysis about a VA

---

[3]  Since the VA disability ratings decision did not issue until after review by the ALJ and the Appeals Council, the evidence was new and noncumulative and good cause existed for the failure to submit it at the administrative level.

disability or benefits decision but will consider all of the supporting evidence underlying the VA's decision to the extent that such evidence is in the record for claims filed on or after March 27, 2017.[4]  *See* 20 C.F.R. §§ 404.1504, 416.904.  The regulations indicate that, because a decision by any other governmental agency or a nongovernmental entity about whether a claimant is disabled, blind, employable, or entitled to benefits is based on its rules, such decision does not bind the SSA and is not the SSA's decision about whether a claimant is disabled or blind under the SSA's rules. 20 C.F.R. §§ 404.1504, 416.904.  Accordingly, for any claims filed after March 27, 2017, the SSA will not provide any analysis in its determination or decision about a decision made by any other governmental agency, specifically including the VA, regarding whether a claimant is disabled, blind, employable, or entitled to any benefits. 20 C.F.R. §§ 404.1504, 416.904.  Since the ALJ discussed the underlying VA records in the SSA claim file, along with the other evidence, and since he would not need to provide any analysis regarding the VA disability determination, the subsequently issued VA ratings decision is not material, since there is no reasonable possibility it would change the administrative result, and consequently does not warrant remand.

Turning next to the C&P examination note, Plaintiff argues, in a conclusory statement, that she did not know the C&P examination note existed at the time of the ALJ's decision, that good cause existed for her failure to submit it to the ALJ, and that the Court should consider it (Doc. 22, at 19).  Plaintiff's argument regarding good

---

[4]  As Plaintiff submitted her applications for benefits on May 3, 2018 (Tr. 167-70, 171-76), the new regulations apply.

cause for her failure to submit the C&P examination note lacks merit. Namely, Plaintiff attended the C&P examination in December 2016, Plaintiff's representative reviewed the evidence of record prior to the administrative hearing, Plaintiff's representative received permission to submit additional evidence to the ALJ following the administrative hearing, and Plaintiff's representative produced additional evidence after the hearing and later received an opportunity to present any issues or additional evidence to the Appeals Council upon review of the ALJ's decision. Further, Plaintiff offers no explanation or elaboration as to how, given that backdrop, she was unaware of the existence of the C&P examination note. Based on the foregoing, Plaintiff cannot establish good cause for her failure to submit the C&P examination note

Even if she could, the C&P examination note would not have changed the administrative result, as it echoed similar findings made contemporaneously during her other VA appointments. Although she presented as agitated when discussing her past, anxious, and tearful at times, she was fully oriented with normal speech rate and tone, normal thought content and progression, no suicidal or homicidal ideations, normal attention and concentration, a good fund of knowledge, good language, good insight and judgment, average intelligence, and normal abstract reasoning (Doc. 22, Ex. B, at 10-11). Plaintiff denied any significant problems with activities of daily living (Doc. 22, Ex. B, at 11). While she endorsed symptoms associated with depression and anxiety, including withdrawal, isolation, depressed mood, low energy, passive suicidal ideation without plan or intent, crying spells, worthlessness, nervousness, restlessness, fatigue, excessive worrying, trouble making decisions, and irritability, Plaintiff

indicated that the severity of her symptoms only registered as moderate (Doc. 22, Ex. B, at 11-12). Despite her physical and mental impairments, the examiner indicated that Plaintiff could manage her own financial affairs (Doc. 22, Ex. B, at 12). Regarding her employability, the examiner opined that Plaintiff's ability to understand and follow instructions was considered not impaired; ability to retain instructions as well as sustain concentration to perform simple tasks was considered not impaired; ability to sustain concentration to task and persistence and pace was considered mildly impaired; ability to respond appropriately to coworkers, supervisors, or the general public was considered mildly impaired; and ability to respond appropriately to changes in the work setting was considered mildly impaired (Doc. 22, Ex. B, at 14). The examiner concluded that Plaintiff's mental condition would not preclude occupational functioning in a sedentary, structured, solitary work environment that accommodated physical limitations (Doc. 22, Ex. B, at 14).

Nothing in the C&P examination note conflicts or is inconsistent with the ALJ's finding that Plaintiff did not have a severe impairment prior to January 1, 2020. Rather, the C&P examination note confirms that, though Plaintiff was diagnosed with mental and physical impairments prior to January 1, 2020, those impairments, either singly or in combination, did not preclude Plaintiff from performing work activities. As a result, consideration of the C&P examination note would not change the administrative result, meaning it is not material. Based on the foregoing, Plaintiff failed to establish a basis for remand under sentence six.

*IV.    Conclusion*

For the reasons stated herein, the ALJ applied the correct legal standards, the ALJ's decision is supported by substantial evidence, and remand is not warranted under sentence six.  Accordingly, after consideration, it is hereby

ORDERED:

1.    The decision of the Commissioner is affirmed.

2.    The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 26th day of September, 2022.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


cc:    Counsel of Record